JUDGE KEENAN

08 CV 6744

Jaculin Aaron
Susan Reiss
John C. Scalzo
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:    1.212.848.4000
Facsimile:    1.212.848.7179
Email:    jaaron@shearman.com

Attorneys for Plaintiff
Dress for Success Worldwide

RECEIVED
JUL 29 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| DRESS FOR SUCCESS WORLDWIDE, | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | |
| DRESS 4 SUCCESS, | : | |
| Defendant. | : | |
| | x | |

**COMPLAINT**

1.      Plaintiff, Dress for Success Worldwide ("Dress for Success" or

"Plaintiff"), appearing through its undersigned counsel, alleges as follows, based on first-hand

knowledge and on information and belief:

**Nature of Action**

2.      This is an action for trade name and service mark infringement, false

designation of origin, false advertising, and dilution under the Trademark Act of 1946, as

amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.,* for common law trade name and service

mark infringement and unfair competition, for conversion, and for breach of contract.

## Jurisdiction and Venue

3.      This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under the jurisdictional provisions of Title 28 of the United States Code, 28 U.S.C. §§ 1331, 1338, and 1367.  Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c).

## Parties

4.      Plaintiff Dress for Success is a not-for-profit corporation organized under the laws of the State of New York, having its principal place of business at 32 East 31st Street, 7th Floor, New York, New York 10016.

5.      Upon information and belief, Dress 4 Success (the "Defendant") is a not-for-profit corporation organized under the laws of the State of California, having its principal place of business at 719 South Los Angeles Street, Los Angeles, California 90014.

## Dress for Success's Business and the DRESS FOR SUCCESS® Mark

6.      Established in 1996, Dress for Success is a nationally and internationally known non-profit organization dedicated to improving the lives of women throughout the world. The mission of Dress for Success is to provide disadvantaged women with professional attire, a network of support, and career development tools to help them achieve economic independence and professional success.  Dress for Success has more than eighty-seven affiliates located throughout the United States and in Canada, Europe, and New Zealand.  Each affiliate is an independent, volunteer-driven non-profit organization committed to fulfilling Dress for Success's mission at the local level.  Each affiliate operates under a local name, such as, for example, Dress for Success Philadelphia.

7.    Over the past decade, Dress for Success and its affiliates have served over 450,000 women across three continents, including 120,000 in the past three years. Dress for Success also operates a website at http://www.dressforsuccess.org that has more than 500,000 visitors annually.

8.    Dress for Success attracts clients from a continually expanding and diverse group of non-profit and government agencies, including homeless shelters, immigration services, job training programs, educational institutions, and domestic violence shelters. More than 2,750 organizations in the United States and other countries send women to Dress for Success for professional apparel and career development services.

9.    While Dress for Success may be best known for providing suits to women, it also has employment retention programs. For instance, Dress for Success established the Professional Women's Group (the "PWG") program, which provides ongoing support to enable women to successfully transition into the workforce, build thriving careers, and prosper in the workplace. PWG members are entitled to attend meetings at any Dress for Success affiliate throughout the world and benefit from additional employment retention and mentoring programs.

10.    As a global organization, Dress for Success receives significant publicity each year in the local, national, and international press. In 2007 alone, Dress for Success was featured in more than 750 newspaper articles, reaching an audience of 125 million readers around the world. Dress for Success has been the subject of pieces in, among other publications, *The New York Times, The Washington Post, The Wall Street Journal, USA Today Weekend Magazine, The Denver Post, O (The Oprah Magazine), Vanity Fair, Cosmopolitan, Business Week, Redbook, Glamour*, and *Women's Wear Daily*. Dress for Success also has been featured on television and radio programs such as *Oprah, 60 Minutes, Fox News Rising* (Charlotte, North

Carolina), *Good Day Milwaukee* (Milwaukee, Wisconsin), and *Good Day New Mexico* (Albuquerque, New Mexico).

11.    Since 1996, Dress for Success has owned, used, and continues to use the trade name "Dress for Success" and service mark "DRESS FOR SUCCESS" (the "DRESS FOR SUCCESS Mark"), in connection with the collection and distribution of professional clothing to disadvantaged women seeking employment and other services to assist such women in obtaining and retaining employment.  Through years of use, extensive publicity, and widespread news reports, the DRESS FOR SUCCESS Mark has become well known and famous throughout the United States and elsewhere in the world, and has acquired tremendous valuable goodwill.

12.    The DRESS FOR SUCCESS Mark has been duly registered in the U.S. Patent and Trademark Office under U.S. Registration No. 2,220,390, dated January 26, 1999, for "charitable services, namely, providing work-related clothing to low income women seeking employment."  This registration is valid and incontestable, in full force and effect, unrevoked, and uncancelled.  A copy of the registration is annexed hereto as Exhibit A.

13.    Each affiliate of Dress for Success enters into a Membership Agreement with Dress for Success.  Under the Membership Agreement, affiliates receive benefits, including alignment with an internationally-recognized organization with a well-known and respected logo, brand, and mission; pass-through contributions from corporate sponsors of Dress for Success; access to materials, best practices, and programs; free space on the Dress for Success website and a personal web page address and e-mail address; paid travel, accommodations, and meals for two attendees of the *Success Summit*, a leadership conference for PWG members and coordinators; travel for one attendee and registration for two participants for the annual leadership conference, a gathering of all affiliates that focuses on skills and information needed

to build and manage strong non-profit organizations; use of the Dress for Success Intranet, a private forum through which affiliates share information and swap inventory; the opportunity to leverage the relationships Dress for Success builds with national and international corporations to establish partnerships on the local level; and the support of a full-time professional staff at Dress for Success with extensive experience in fundraising, public relations, and non-profit management.

14.    Each affiliate of Dress for Success also enters into a Trademark License Agreement with Dress for Success.  Under the Trademark License Agreement, affiliates are granted an exclusive license to use the DRESS FOR SUCCESS Mark in their respective local territories.  Affiliates also agree in the Trademark License Agreement that all literature and other promotional materials that they produce in connection with their services shall contain the DRESS FOR SUCCESS Mark.

15.    Dress for Success's *Communications Guide*, developed for internal use by its affiliates in their promotional activities, states that the organization's "brand is our most important asset."

16.    Dress for Success currently has two licensees of the DRESS FOR SUCCESS Mark in California (San Diego and San Francisco), and intends to open a Dress for Success West Coast headquarters in Los Angeles, California later this year, which will also serve the Greater Los Angeles Area.  Applications for membership in Dress for Success are also pending for locations in Fresno and Sacramento, California.

17.    Dress for Success has invested, and continues to invest, substantial resources in the development and maintenance of the DRESS FOR SUCCESS Mark.

### Defendant and Its Loss of Any Rights in the Dress 4 Success Mark

18.     Prior to 2001, Defendant was incorporated as a not-for-profit corporation in California under the name Dress 4 Success. Its founder was Ms. Janet Lavender. Defendant's stated mission was to outfit low-income men and women in professional apparel and support them in their career development.

19.     On information and belief, Ms. Lavender knew of the Dress for Success trade name and/or service mark prior to Defendant's commencement of operation under the name Dress 4 Success.

20.     On information and belief, Defendant never filed for state or federal registration of "Dress 4 Success" as a service mark (the "DRESS 4 SUCCESS Mark").

21.     Prior to 2001, Dress for Success licensed an affiliate in Los Angeles. Dress for Success and Defendant had a dispute as to the priority of their marks in the Los Angeles area. This dispute was resolved when Defendant entered into a Membership Agreement (the "Membership Agreement") and Trademark License Agreement (the "Trademark License Agreement and, together with the Membership Agreement, the "Agreements") with Dress for Success, on and effective as of January 18, 2001, and became an affiliate of Dress for Success and commenced operations as Dress for Success Los Angeles. A copy of the Membership Agreement is annexed hereto as Exhibit B and a copy of the Trademark License Agreement is annexed hereto as Exhibit C.

22.     Pursuant to the Trademark License Agreement, Defendant was granted a license to use the DRESS FOR SUCCESS Mark in Los Angeles in conjunction with the collection and distribution of professional clothing to women seeking employment and other activities related to assisting such women in obtaining and retaining employment.

23.    Defendant acknowledged in the Trademark License Agreement that Dress for Success "owns the tradename Dress for Success and the stylized [Dress for Success] trademark and logo . . . ('the Trademark')" and the "exclusive right, title, and interest in and to the Trademark and associated goodwill," and agreed to "not at any time do or cause to be done any act or thing contesting or in any way impairing, diluting, tarnishing, injuring, or otherwise jeopardizing such right, title and interest." Defendant also agreed that "[a]ll literature and promotional materials relating to the provision of services set forth in clause 3.c. published or produced by Licensee shall contain the Trademark." Defendant further agreed in the Trademark License Agreement that "all uses of the Trademark by Licensee shall inure to the benefit of the Licensor."

24.    Defendant agreed in the Trademark License Agreement and the Membership Agreement that each Agreement "shall be interpreted in accordance with the laws of the State of New York and applicable federal law of the United States," and "[a]ny and all disputes relating to [the] Agreement shall be adjudicated in the State of New York." This dispute relates to the Agreements.

25.    On June 4, 2001, Defendant filed a Certificate of Amendment with the Secretary of the State of California amending its Articles of Incorporation to reflect a change in its corporate name from Dress 4 Success to Dress for Success Los Angeles. In 2001, Defendant also discontinued the outfitting of and providing professional support for low-income men, which is not a service offered by Dress for Success.

26.    Defendant agreed to comply with the Dress for Success *Communications Guide*, which required Defendant to adhere to certain guidelines regarding the use of the DRESS FOR SUCCESS Mark on, among other things, brochures, flyers, press releases, merchandise,

7

invitations, and marketing materials.  For instance, Defendant agreed to always refer to itself as Dress for Success Los Angeles and to write the DRESS FOR SUCCESS LOS ANGELES mark the same way, every time it was used by Defendant.  Defendant further agreed to use the DRESS FOR SUCCESS LOS ANGELES mark on signage, advertising, flyers, letterhead, and other promotional materials.

27.    Defendant also agreed to comply with the Dress for Success *Policy Guide*, which required Defendant to adhere to certain branding requirements and Dress for Success policies.  For instance, Defendant agreed to seek the approval of Dress for Success before extending and applying the Dress for Success brand to products or activities beyond the principal Dress for Success client service and fundraising programs.  In addition, Defendant agreed to pay an annual licensing fee of $500 for use of the DRESS FOR SUCCESS Mark, maintain a board of directors, and submit an annual written survey, yearly budget, and other information to Dress for Success.  Defendant further agreed to adhere to accepted standards of accountability, financial propriety, and not-for-profit corporate governance.

28.    At or around the time of the execution of the Agreements, Defendant switched from using its DRESS 4 SUCCESS Mark to using the DRESS FOR SUCCESS LOS ANGELES mark in providing its services.

29.    For approximately the next seven years, Defendant operated as an affiliate of Dress for Success under the name Dress for Success Los Angeles and used the service mark DRESS FOR SUCCESS LOS ANGELES in providing services.  Defendant's dealings with clients, donors, and other members of the public during that period were conducted under the DRESS FOR SUCCESS LOS ANGELES mark.  Defendant promoted itself in print, online, and at events as Dress for Success Los Angeles.

30.    Any common law rights Defendant may have had based on its previous use of the DRESS 4 SUCCESS Mark merged into Dress for Success's rights and were thus lost when Defendant was licensed by Dress for Success to use the DRESS FOR SUCCESS Mark in January 2001.  In addition, Defendant abandoned any common law rights in the DRESS 4 SUCCESS Mark when it entered into the Trademark License Agreement and began operations under the name and mark DRESS FOR SUCCESS LOS ANGELES and continued its use for the next seven years.

31.    On September 19, 2007, Defendant, through its attorneys, requested renewal of the Trademark License Agreement, which was set to expire by its own terms on January 17, 2008.

### Termination of Dress for Success Los Angeles as an Affiliate of Dress for Success

32.    On March 6, 2008, the Board of Directors of Dress for Success voted unanimously to terminate for cause Defendant's membership in Dress for Success after a hearing before the Board of Directors that was attended by Defendant's attorneys.  The Board of Directors also decided not to renew the Trademark License Agreement with Defendant.

33.    The grounds for terminating Defendant's membership in Dress for Success included, but were not limited to:

a.    Defendant frequently failed to be available and responsive to prospective donors and sponsors, many of whom complained to Dress for Success about Defendant.

b.    Defendant cashed a $10,000.00 check from a corporate sponsor of Dress for Success that, upon information and belief, Defendant knew was payable to and intended for Dress for Success and ignored repeated requests by the corporate sponsor for repayment, thereby harming the reputation of Dress for Success and injuring the DRESS FOR

SUCCESS Mark in violation of the Agreements.

        c.       Defendant recognized donations, including one donation of 25,429 shoes valued at $890,015.00, with improper tax receipts and failed to respond to donor requests for tax receipts.

        d.       Defendant received the lowest rating on five of the six categories reported on the Dress for Success 2007 annual survey. From 2005 to 2006, Defendant's total "suitings" for disadvantaged women declined 79.6%, from 2,700 to 550; second suitings declined 100%, from 800 to zero; active volunteers declined 74.4%, from 78 to 20; total funds raised declined 37.6%, from $75,602.00 to $47,180.00; and PWG members declined 46.7%, from 75 to 40.

        e.       Defendant experienced sharp declines in income and the number of clients served since 2002, with income falling from $80,000.00 in 2002 to $47,180.00 in 2006, and the number of clients served falling from 3,500 in 2002 to 550 in 2006. By contrast, an affiliate in the comparable (but smaller) market of Houston, Texas raised $921,951.06 and served over 2,251 clients in 2006.

        f.       Defendant's profit and loss statement for the first two quarters of 2007 indicated that Ms. Lavender spent $4,748.18 (approximately 18% of Defendant's revenues for that period) on an automobile lease, and that Defendant's net operating income for that period was only $1,029.01.

        g.       Defendant failed to submit required information on time, if at all.

        h.       Defendant failed to timely submit the annual licensing fee for 2003 (30 days late), 2004 (over 240 days late), and 2007 (over 30 days late).

        i.       Defendant elected not to participate in events that would have

enhanced Defendant's relationship with national sponsors of Dress for Success and behaved inappropriately in its dealings with them.

34.    On March 10, 2008, Defendant accepted a donation from a corporate sponsor of Dress for Success intended for Dress for Success's Los Angeles affiliate without advising the corporate sponsor that it was being terminated as a member of Dress for Success.

### Defendant Commences Operation as Dress 4 Success

35.    Upon information and belief, prior to the termination of Defendant's membership in Dress for Success and before expiration of the Trademark License Agreement, on February 28, 2008, Ms. Lavender registered the domain name www.dress4success.org.

36.    According to records filed with the Secretary of State of the State of California, on May 15, 2008, Defendant changed its corporate name to Dress 4 Success.

37.    Upon information and belief, at or around the time of the termination of Defendant as a Dress for Success affiliate, Defendant began operating as Dress 4 Success and under the DRESS 4 SUCCESS Mark and launched a new website at www.dress4success.org where Defendant advertises and promotes itself as "Dress 4 Success."

38.    As set forth below, the typeface for the logotype in the DRESS 4 SUCCESS Mark mimics the typeface for the logotype in the DRESS FOR SUCCESS Mark, in that it is in all capital letters in a similar font.  Defendant's website also improperly uses the federal registration symbol "®" next to the DRESS 4 SUCCESS Mark's logotype even though the DRESS 4 SUCCESS Mark is not a federally registered mark.

**DRESS FOR SUCCESS®**

**DRESS 4 SUCCESS®**

39.    According to its new website, Defendant:

is a non-profit organization dedicated to improving the lives of women and men in the community which it serves. The professional clothing, employment retention programs and ongoing support that we provide our clients symbolizes our faith in people and their ability to be self-sufficient and successful in whatever they set out to accomplish.

40.    This and other content on Defendant's website was copied, almost verbatim, from Dress for Success's website, which states that:

Dress for Success Worldwide is an international non-profit organization dedicated to improving the lives of women located in 85 cities across the U.S., Canada, the U.K., the Netherlands and New Zealand. The professional clothing, employment retention programs and ongoing support that we provide our clients symbolize our faith in every woman's ability to be self-sufficient and successful in her career.

41.    Defendant is apparently using the Dress 4 Success trade name and DRESS 4 SUCCESS Mark to foster confusion among the public as to some continuing affiliation of Defendant with Dress for Success. Upon information and belief, Ms. Lavender told a donor that Defendant was accepting donations of new and nearly new suits for "S.O.S. – Send One Suit – Week®," a national suit drive held by Dress for Success from March 31 through April 5, 2008, and sponsored by two corporate sponsors of Dress for Success. Upon information and belief, Ms. Lavender was evasive about whether Defendant was still affiliated with Dress for Success when trying to solicit a $30,000 donation from a potential corporate sponsor with ties to Dress for Success.

42.    Defendant's use of the Dress 4 Success name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org is likely to cause and, upon information and belief, has caused actual customer confusion and is likely to lead and, upon information and belief, has led the public to mistakenly believe that Defendant and Dress for Success are related or affiliated.

**Dress for Success Sends a Cease and Desist Demand to Dress 4 Success**

43.    Upon learning of Defendant's use of the Dress 4 Success name and

DRESS 4 SUCCESS Mark, on May 20, 2008, Dress for Success, through its attorneys, sent a

letter to Defendant demanding that Defendant refrain from any current or future use of the

DRESS 4 SUCCESS Mark and asserting that Defendant's use of the DRESS 4 SUCCESS Mark

infringes Dress for Success's rights in the DRESS FOR SUCCESS Mark.  On June 13, 2008,

counsel for Defendant responded orally to the May 20 letter stating that Defendant will not

voluntarily cease use of the DRESS 4 SUCCESS Mark.

44.    Defendant has engaged in said acts of infringement despite acknowledging

in writing the prior rights of Dress for Success in the DRESS FOR SUCCESS Mark.  Thus,

Defendant has acted unlawfully, with a willful and deliberate intent to cause confusion among

the consuming public and sponsors.

## COUNT I

### Federal Service Mark Infringement

45.    Plaintiff repeats the allegations contained in paragraphs 1 through 44

above as if fully set forth herein.

46.    Defendant has and is engaged in acts of service mark infringement of

Plaintiff's federally registered mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C.

§ 1114(1).

47.    Defendant has used and is using the Dress 4 Success trade name, DRESS

4 SUCCESS Mark, and domain name www.dress4success.org as described herein in such a

manner as to create a likelihood of confusion among customers, potential customers, and

sponsors, as to some affiliation, connection, or association of Defendant with Plaintiff, or as to

the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by

Plaintiff, which acts of Defendant are likely to damage, impair, and dilute that part of Plaintiff's

goodwill symbolized by the well-known registered DRESS FOR SUCCESS Mark to Plaintiff's

immediate and irreparable damage.

48.    Defendant's use of the Dress 4 Success trade name, DRESS 4 SUCCESS

Mark, and domain name www.dress4success.org in the manner alleged constitutes service mark

infringement in violation of 15 U.S.C. § 1114(1).

49.    Defendant had actual knowledge of Plaintiff's rights in the DRESS FOR

SUCCESS Mark when it began using the Dress 4 Success trade name, DRESS 4 SUCCESS

Mark and the domain name www.dress4success.org in 2008. Thus, Defendant's acts of

infringement complained of herein have been malicious, fraudulent, deliberate, willful,

intentional, and in bad faith, with full knowledge and conscious disregard of Plaintiff's rights in

the DRESS FOR SUCCESS Mark. In view of the egregious nature of Defendant's actions, this

is an exceptional case within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. §

1117(a).

50.    As a result of Defendant's acts of infringement, Plaintiff has suffered and

continues to suffer irreparable injury and loss of reputation for which there is no adequate

remedy at law. Unless enjoined by this Court, Defendant will continue these acts of

infringement to Plaintiff's immediate and irreparable damage.

## COUNT II

### Federal Unfair Competition, False Designation of Origin, and False Advertising

51.    Plaintiff repeats the allegations contained in paragraphs 1 through 50

above as if fully set forth herein.

52.    Defendant has and is engaged in acts of unfair competition through the use

of false designations of origin and false advertising in violation of Section 43 of the Lanham Act,

15 U.S.C. § 1125(a).

53.  Defendant has used and is using the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org, and Defendant has made and is making false express or implied representations that its services originate with or are endorsed by Plaintiff in such a manner as to create a likelihood of confusion among customers, potential customers, and sponsors, as to some affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff, which acts of Defendant are likely to damage, impair, and dilute that part of Plaintiff's goodwill symbolized by the well-known DRESS FOR SUCCESS Mark to Plaintiff's immediate and irreparable damage.

54.  Defendant's use of a trade name, service mark, and domain name that are confusingly similar to those used by Plaintiff in connection with the outfitting and professional support of disadvantaged women, and Defendant's express or implied representations that its services originate with or are endorsed by Plaintiff constitute a use of false designation of origin or false description or representation of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

55.  Defendant's use of a trade name, service mark, and domain name that are confusingly similar to those used by Plaintiff constitutes unfair competition entitling Plaintiff to remedies afforded pursuant to Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

56.  Plaintiff has no control over the quality of the services that are promoted, advertised, and provided by Defendant under the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org, with the result that Plaintiff's valuable goodwill in its DRESS FOR SUCCESS Mark is no longer within its control.

57.     Defendant's use of the federal registration symbol "®" next to the DRESS 4 SUCCESS Mark on its website and in any other contexts constitutes false advertising in violation of Section 43 of the Lanham Act.

58.     As a result, Plaintiff has suffered and continues to suffer irreparable injury for which there is no adequate remedy at law.  Unless enjoined by this Court, Defendant will continue to make such false designations of origin in connection with the provision of services rendered in commerce, to Plaintiff's immediate and irreparable damage.

## COUNT III

### Dilution of a Famous Mark

59.     Plaintiff repeats the allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     Defendant has and is engaged in acts constituting service mark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

61.     Defendant has made commercial use of the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org with the willful intent to trade on Plaintiff's reputation or to cause dilution of the famous DRESS FOR SUCCESS Mark.

62.     Defendant's use in 2008 of the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org began long after the DRESS FOR SUCCESS Mark had become well known and famous.

63.     Defendant's use of the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org is likely to cause dilution of the distinctive quality of Plaintiff's famous DRESS FOR SUCCESS Mark.

64.     Defendant's use of the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org is likely to lessen the capacity of Plaintiff's

famous DRESS FOR SUCCESS Mark to identify and distinguish Plaintiff's services and is likely to tarnish the DRESS FOR SUCCESS Mark.

65.    Defendant's activities complained of herein constitute service mark dilution in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

66.    As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable injury and loss of reputation for which there is no adequate remedy at law. Unless enjoined by this Court, Defendant will dilute by blurring and tarnishing Plaintiff's famous DRESS FOR SUCCESS Mark to the immediate and irreparable damage of Plaintiff.

## COUNT IV

### Common Law Trade Name and Service Mark Infringement and Unfair Competition

67.    Plaintiff repeats the allegations contained in paragraphs 1 through 66 above as if fully set forth herein.

68.    Defendant's uses of the Dress 4 Success trade name, DRESS 4 SUCCESS Mark, and domain name www.dress4success.org constitute acts of trade name and service mark infringement and unfair competition in violation of the common law of every state wherein Defendant advertises or publicizes its name as "Dress 4 Success" and uses the DRESS 4 SUCCESS Mark.

69.    The acts and conduct of defendant complained of herein are likely to have damaged Plaintiff, and will, unless restrained, further impair the value of the DRESS FOR SUCCESS Mark to Plaintiff and the goodwill associated therewith.

70.    Defendant has engaged and continues to engage in these activities knowingly and willfully.

71.    Defendant's acts of common law infringement and unfair competition, unless enjoined by this Court, will continue to cause plaintiff to sustain irreparable damage, loss

and injury for which plaintiff has no adequate remedy at law.

      72.     The unauthorized acts by Defendant in connection with its advertising and promotion of its services constitutes trade name and service mark infringement of Plaintiff's DRESS FOR SUCCESS Mark and unfair competition with Plaintiff, and are likely to cause confusion and mistake in the minds of the public as to the source of origin of Defendant's services.

**COUNT V**

**Conversion**

      73.     Plaintiff repeats the allegations contained in paragraphs 1 through 72 above as if fully set forth herein.

      74.     On information and belief, at the times herein mentioned, and in particular when Defendant cashed the $10,000 check from a corporate sponsor of Dress for Success on or about October 9, 2007, Defendant knew that Plaintiff was the intended payee of the check.

      75.     Prior to the commencement of this action, Defendant had been explicitly informed that the check had been inadvertently sent to Defendant and a demand was made for its immediate return.

      76.     Although Defendant acknowledged that the proceeds of the check should be returned and agreed to return them, Defendant has failed to return the check or proceeds of the check to the corporate sponsor, to be remitted to Plaintiff.

      77.     Defendant's continued failure to return the check or the proceeds of the check is wrongful.

      78.     As the rightful payees of the check, Plaintiff is entitled to the immediate return of the check or its proceeds to the corporate sponsor for remission to Plaintiff.

      79.     Defendant's wrongful possession of the check has caused Plaintiff to

sustain economic damages in an amount to be determined at trial.

## COUNT VI

### Breach of Contract

80.     Plaintiff repeats the allegations contained in paragraphs 1 through 79 above as if fully set forth herein.

81.     The Membership Agreement and the Trademark License Agreement were valid, binding, and fully enforceable contracts.

82.     The Dress for Success *Policy Guide* was a valid, binding, and fully enforceable contract.

83.     Plaintiff at all times satisfied its obligations under the Membership Agreement, the Trademark License Agreement, and the Dress for Success *Policy Guide*.

84.     Defendant breached paragraph 3.f. of the Trademark License Agreement, paragraphs 4.c. and 6 of the Membership Agreement, and the *Policy Guide* by, without limitation, the following actions and omissions:

        a.     cashing a $10,000.00 check from a corporate sponsor of Dress for Success that, upon information and belief, Defendant knew was payable to and intended for Plaintiff, and ignoring repeated requests by the corporate sponsor of Dress for Success for repayment;

        b.     frequently failing to be available and responsive to actual and prospective donors, sponsors, volunteers, and clients, and dealing with them in an inappropriate manner;

        c.     accepting an offer made by the consumer correspondent of the *Colorado Springs Independent* to donate "lingerie to needy hot chicks," which acceptance was published in the newspaper on April 21, 2005;

d.      recognizing donations, including one donation of 25,429 shoes valued at $890,015.00, with improper tax receipts and failing to respond to donor requests for tax receipts;

e.      upon information and belief, using donations for purposes other than those stated in solicitations and other than for charitable purposes;

f.      operating a thrift shop in Long Beach, California without establishing it as a separate 501(c)(3) organization;

g.      receiving a scorecard rating of five on a scale of one to five (with five being the lowest) on five of the six categories reported on the Dress for Success 2007 annual survey;

h.      reporting revenue inconsistently between Defendant's 2006 Form 990 ($51,153.00) and its 2006 annual survey ($47,180.00) and spending $4,748.18 (approximately 18% of Defendant's total revenues for that period) for the first two quarters of 2007 on an automobile lease for Ms. Lavender;

i.      failing to timely submit the annual licensing fee for 2003 (30 days late), 2004 (over 240 days late), and 2007 (over 30 days late);

j.      failing to complete the 2004 annual survey, submit the 2007 annual survey, and timely submit the annual survey for 2005 (over 90 days late) and (over 45 days late);

k.      failing to timely submit a signed *Policy Guide Acknowledgement Form* for 2005 (over 120 days late), 2006 (over 45 days late), and 2007 (over 60 days late), and a signed *Communications Guide Acknowledgement Form* for 2005 (over 180 days late);

l.      electing not to participate in events that would have enhanced Defendant's relationship with national sponsors of Dress for Success and behaving

inappropriately towards sponsors and other third parties; and

   m. Defendant's written materials and correspondence with members of the public using the DRESS FOR SUCCESS Mark were often prepared poorly and filled with typographical and other errors.

   85. As a result of these and other wrongful actions, Defendant has harmed the reputation of Plaintiff and injured the DRESS FOR SUCCESS Mark.

   86. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, which Plaintiff believes to be not less than $10,000 plus interest, for which Defendant is liable to Plaintiff.

**<u>PRAYER</u>**

   87. WHEREFORE, Plaintiff prays for judgment that any claim of right of Defendant to the DRESS 4 SUCCESS Mark were lost and abandoned by Defendant.

   88. Plaintiff further prays for judgment that Defendant's use of the trade name Dress 4 Success, service mark DRESS 4 SUCCESS, and use of the domain name www.dress4success.org (1) create a likelihood of confusion as to the source or sponsorship of Defendant's services; and (2) constitute trademark infringement or unfair competition, and otherwise violate the rights of Plaintiff under federal and state law.

   89. Plaintiff further prays that:

     A. Defendant and Defendant's agents, servants, employees, attorneys, and all those persons in active convert or participation with Defendant, be enjoined and restrained, during the pendency of this action and permanently from:

(1)     directly or indirectly infringing or diluting or contributing to the infringement or dilution of the DRESS FOR SUCCESS Mark in any manner, including generally, but not limited to, promoting, distributing, advertising, selling or offering any services under a mark that infringes said service, and specifically,

    (a)     using the DRESS 4 SUCCESS Mark or any mark confusingly similar thereto, in connection with the promotion, distribution, advertising, or providing services;

    (b)     applying the DRESS 4 SUCCESS Mark or any mark that is confusingly similar thereto, on any advertisement or promotional material used in connection with the provision of services;

(2)     using any designation, trademark, trade name, logo or design that tends falsely to represent, or is likely to confuse, mislead, or deceive purchasers, customers or members of the public, or members of the trade into the belief that unauthorized services distributed, promoted, advertised, sold or offered for sale by Defendant originates from Plaintiff, or that said services have been sponsored, approved or licensed by or associated with Plaintiff or is in some way connected or affiliated with Plaintiff;

(3)    otherwise infringing the DRESS FOR SUCCESS Mark or competing unfairly with Plaintiff in any manner or damaging Plaintiff's respective goodwill, reputation or business;

(4)    registering the DRESS 4 SUCCESS Mark or any confusingly similar mark, in the United States; and

(5)    using the domain name www.dress4success.org.

B.    Defendant be ordered to file with this Court and to serve upon Dress for Success, within 30 days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

C.    Dress for Success recover all damages it has sustained as a result of Defendant's trade name and service mark infringement, false advertising, dilution, and unfair competition, and that said damages be trebled;

D.    An accounting be directed to determine Defendant's proceeds resulting from its activities, and that such proceeds be paid over to Dress for Success, increased as the Court finds to be just under the circumstances of this case;

E.    Dress for Success recover its reasonable attorneys' fees;

F.    Dress for Success recover its costs of this action and prejudgment and post-judgment interest;

G.    Dress for Success recover such other relief as the Court may deem appropriate; and

H.    That Defendant execute and deliver to Plaintiff necessary documents to withdraw as the registrant of the domain name www.dress4success.org.

90.    Plaintiff further prays for judgment against Defendant as follows:

A.    Awarding Plaintiff damages not less than $10,000 in an amount to be proven at trial, plus interest;

B.    Awarding Plaintiff attorneys' fees and expenses; and

C.    Such other relief that the Court deems just and proper.

91.    Plaintiff further prays for judgment against Defendant as follows:

A.    Finding that Defendant has breached the Agreements and the *Policy Guide*;

B.    Awarding Plaintiff damages not less than $10,000, in an amount to be proven at trial, plus pre- and post-judgment interest;

C.    Awarding Plaintiff attorneys' fees and expenses incurred in connection with enforcing the Agreements; and

D.    Such other relief that the Court deems just and proper.

Dated: July 28, 2008                    SHEARMAN & STERLING LLP


By: _____

Jaculin Aaron
Susan Reiss
John C. Scalzo

Attorneys for Plaintiff Dress for Success
Worldwide

**JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all the claims so triable asserted in this Complaint.

Dated:  July 28, 2008                    SHEARMAN & STERLING LLP


By: _____
       Jaculin Aaron
       Susan Reiss
       John C. Scalzo

       Attorneys for Plaintiff Dress for Success Worldwide

25

Exhibit A

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No. 2,220,390

## United States Patent and Trademark Office

Registered Jan. 26, 1999

### SERVICE MARK
### PRINCIPAL REGISTER

## DRESS FOR SUCCESS

DRESS FOR SUCCESS NEW YORK (NEW YORK CORPORATION)
135 WEST 4TH STREET
NEW YORK, NY 10012

FOR: CHARITABLE SERVICES, NAMELY, PROVIDING WORK-RELATED CLOTHING TO LOW INCOME WOMEN SEEKING EMPLOYMENT, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 9-0-1996; IN COMMERCE 9-0-1996.

SER. NO. 75-393,525, FILED 11-20-1997.

JOHN MARSH JR., EXAMINING ATTORNEY

Exhibit B

## MEMBERSHIP AGREEMENT

This agreement is made and entered into as of this _Jan_ day of _18_ 2001, by and between DRESS FOR SUCCESS ® WORLDWIDE, a not-for-profit corporation organized under the laws of the State of New York ("DSW"), and _Dress 4 Success_, a not-for-profit corporation organized under the laws of the State of _California_ ("Member Applicant").

WHEREAS, DSW obtains funding, clothing and products on behalf of its member organizations all of which provide work appropriate attire to low-income women seeking employment;

WHEREAS, Member Applicant distributes work appropriate clothing to women and assists them in preparing for job interviews under the name "Dress for Success ®" pursuant to that certain Trademark License Agreement, dated as of _Jan 18_, 2000 (the "Trademark License"), between DSW and Member Applicant;

WHEREAS, Member Applicant desires to become a member of DSW.

NOW THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1.  Membership.  Upon execution of this Agreement, Member Applicant shall become a member of DSW and shall be entered onto the rolls of membership of DSW and shall be entitled to all of the rights and privileges associated with such membership as set forth in the By-laws of DSW and as under the Not-for-Profit Corporation Law of the State of New York.

2.  Membership Fee.  Member Applicant shall pay DSW a membership fee equal to $500.00 within six months of the execution of this agreement.

3.  Representations and Warranties.  Member Applicant hereby represents and warrants to DSW that:

    a.  Member Applicant is a not-for-profit corporation duly organized under the laws of _California_;

    b.  Member Applicant either (i) has obtained a determination letter from the Internal Revenue Service providing Member Applicant with tax-exempt status under the Internal Revenue Code of 1986, as amended (the "Code"), a copy of which has been delivered to DSW on or prior to the date hereof, or has applied or intends to apply for tax exemption status, or (ii) has entered into a fiscal sponsorship agreement with a not-for-profit corporation that is designated tax exempt under the Code pursuant to which such tax exempt corporation shall

act as Member Applicant's *fiscal sponsor* in accordance with the Code and a copy of such agreement has been delivered to DSW on or prior to the date hereof.

c.  Member Applicant has distributed work appropriate *clothing to at least one* unemployed woman seeking employment in accordance with Section 4(a) herein.

4.  *Covenants of Member Applicant.* Member Applicant hereby covenants and agrees as follows:

a.  Member Applicant shall provide its services free of charge to individuals who are referred to it by governmental, social service and charitable agencies in accordance with the criteria and procedures submitted to DSW prior to the date hereof. The services to be provided by Member Applicant shall consist solely of collecting and distributing clothing to women seeking employment and providing other related support services.

b.  As soon as possible following the end of each calendar year (but no later than March 31 of the following year), Member Applicant shall provide DSW with an annual report setting forth the agencies that provided referrals, the number of clients who sought help from Member Applicant, the number of clients who obtained employment during such year and such other information as Licensor may reasonably request. Such information shall be used by DSW in grant applications and other fundraising proposals, and shall be used to determine the amount of product and funds to which Member Applicant shall be entitled pursuant to Section 5a herein.

c.  Member Applicant shall at all times comply with the Trademark License.

d.  Member Applicant shall attend the annual meeting of members of DSW to be held in New York City in October of each year, or at such time and place as the Board of Directors of DSW shall determine in its sole discretion.

5.  *Covenants of DSW.* DSW hereby agrees and covenants as follows:

a.  DSW shall deliver to Member Applicant a portion of each product it receives, and shall allocate a certain percentage of funds it receives from all sources that permit such allocation, to Member Applicant. Such portion of products and percentage of funds shall be determined by DSW in its sole discretion.

b.  DSW shall make its staff reasonably available to answer any questions Member Applicant may have regarding Member Applicant's organization, operation and fundraising.

6.  **Termination.** The Board of Directors shall have the right to terminate Member Applicant's membership in DSW at any time for cause in accordance with the By-laws of DSW. Termination "for cause" shall include, but shall not be limited to, a breach by Member Applicant of any representation or warranty or covenant contained in this agreement, a breach by Member Applicant of the Trademark Agreement, failure to pay the membership fee when due, and any action or omission by Member Applicant which would reflect badly on DSW or harm the reputation of DSW and its other members.

7.  **Notices.** Any notices required or permitted to be given under this Agreement shall be deemed sufficiently given if mailed by certified mail, postage prepaid, express courier or telecopier addressed to the party to be notified at the address shown on the signature page hereto, or at such other address as may be furnished in writing to the notifying party from time to time.

8.  **Entire Agreement.** This Agreement contains the entire understanding between the parties hereto, cannot be amended except in writing, signed by the parties hereto, and shall be interpreted in accordance with the laws of the State of New York and applicable federal laws of the United States. Any and all disputes relating to this Agreement shall be adjudicated in the State of New York.

9.  **Counterparts.** This Agreement may be executed in one or more counterparts each of which shall be deemed an original but all of which taken together shall constitute one and the same document.

IN WITNESS WHEREOF, this agreement has been executed as of the day and year first above written.

Dress for Success Worldwide

By: _Perella Davis_

Name: _Perella Davis_

Title: _Affiliate Relation Director_

By: _Janet Lavender_

Name: _Dress4 Success Inc._

Title: _Executive Director/Founder_

Address:

Dress for Success Worldwide
19 Union Square West, Suite 6B
New York, NY 10003

Address:

110 E 9th St. Suite B280
Los Angeles, Ca
90079

Exhibit C

## TRADEMARK LICENSE AGREEMENT

This agreement is made and entered into as of this _18_ day of _Jan._ 2007, by and between DRESS FOR SUCCESS ® WORLDWIDE, a not-for-profit corporation organized under the laws of the State of New York ("Licensor") and _Dress 4 Success_ , a not-for-profit corporation organized under the laws of the State of _California_ ("Licensee").

WHEREAS, Licensor obtains funding, clothing and products on behalf of its member organizations that provide work appropriate attire to low-income women seeking employment;

WHEREAS, Licensor owns the tradename Dress for Success ® and the stylized trademark and logo set forth on Exhibit A ("the Trademark") and believes that its member organizations can benefit from the goodwill of the Trademark;

WHEREAS, Licensee has been or is being organized for the purpose of distributing work appropriate clothing to women and assisting them in preparing for job interviews in _Los Angeles_ (the "Territory");

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1.   Grant of License.  Licensor grants to Licensee the exclusive right to use the Trademark in the Territory solely in conjunction with the collection and distribution of work appropriate clothing to women seeking employment and other activities related to assisting such women obtaining and retaining employment.

2.   Term of License.  Except as otherwise provided herein, this Agreement shall commence on the date hereof and shall remain in full force and effect for a period of seven (7) years from the date hereof unless earlier terminated as provided herein (the "Term"). If Licensee desires to continue using the Trademark after the expiration of the Term, it shall notify Licensor no later than one-hundred and twenty (120) days before the end of the Term and Licensor and Licensee agree to negotiate in good faith to extend the Term.

3.   Conditions to License.  For so long as this Agreement is in effect, Licensee agrees and covenants as follows:

   a.   As soon as Licensee is incorporated under the not-for-profit corporation law of _California_, or the Licensee is already incorporated as a not-for-profit corporation then concurrently herewith, Licensee shall enter into the

Membership Agreement with Licensor in the form of Exhibit A attached hereto (the "Membership Agreement"), pursuant to which Licensee shall become a member of Licensor.

b.  Licensee shall retain its tax-exempt status under the Internal Revenue Code of 1986, as amended (the "Code"), or if it has not yet received a letter of determination from the Internal Revenue Service of its tax-exempt status, it will use its best efforts to obtain such status as soon as possible or shall enter into a fiscal sponsorship agreement with a not-for-profit corporation that is designated tax exempt under the Code pursuant to which such tax exempt corporation shall act as Licensee's fiscal sponsor in accordance with the Code.

c.  Licensee shall provide its services free of charge to individuals who are referred to it by governmental, social service and charitable agencies in accordance with the criteria and procedures submitted to Licensor prior to the date hereof. The services to be provided by Licensee shall consist solely of collecting and distributing clothing to women seeking employment and providing other related support services.

d.  All literature and promotional materials relating to the provision of services set forth in clause 3.c. published or produced by Licensee shall contain the Trademark. Upon request, Licensee shall submit for approval to Licensor samples of all literature and promotional materials relating to the provision of services described in clause 3.c., which approval shall not be unreasonably withheld. Licensee agrees to promptly comply with any reasonable suggestions made by Licensor.

e.  As soon as possible following the end of each calendar year during the Term (but no later than March 31 of the following year), Licensee shall provide Licensor with an annual report setting forth the agencies that provided referrals, the number of clients who obtained help from Licensee, the number of clients who obtained employment during such year and such other information as Licensor may reasonably request.

f.  Licensee shall include at all times the designation ® with the Trademark. Licensee acknowledges Licensor's exclusive, right, title, and interest in and to the Trademark and associated goodwill, and Licensee will not at any time do or cause to be done any act or thing contesting or in any way impairing, diluting, tarnishing, injuring, or otherwise jeopardizing such right, title and interest. Licensee shall not at any time challenge in any way the right and/or title of Licensor in and to the Trademark. Further, Licensee shall not in any manner represent that it has any ownership rights in the Trademark or registrations thereof, and Licensee acknowledges that Licensee's use of the trademark shall not create in Licensee any right, title or interest in or to the Trademark. Licensee acknowledges and agrees that all uses of the Trademark by Licensee shall inure to the benefit of the Licensor.

4. <u>No Sublicense.</u> Licensee shall not be entitled to sublicense, assign, pledge, grant, delegate, or otherwise transfer to any third party any part of its rights or duties under this Agreement, without the prior written consent of Licensor which may be *withheld in its sole discretion.*

5. *<u>Indemnification.</u> Licensor specifically disclaims any and all liability to Licensee and/or third parties relating to Licensee and/or third parties relating to any goods or services offered by Licensee, whether under the Trademark or otherwise.* Licensee shall fully defend, indemnify and hold harmless Licensor from any and all loss, damage or expense (including counsel fees) relating to or arising from the *offering or rendering of services by Licensee or the use by Licensee of the Trademark on any goods.*

Licensee shall promptly notify Licensor of any and all claims or demands made by any third party in relation to alleged acts of infringement or unfair competition arising as a result of Licensee's use of the Trademark. Licensor shall have the sole and exclusive right to defend, settle, compromise or otherwise respond to any *and all allegations of infringement or unfair competition which may be made in* relation to Licensee's use of the Trademark. Licensor shall also have the right to require Licensee to defend, settle, compromise or otherwise respond in accordance with Licensor's instructions, to any and all allegations of infringement or unfair competition which may be made in relation to Licensee's use of the Trademark. *Licensee shall be solely responsible for all legal fees and expenses,* court costs and other costs incurred by it or Licensor in the prosecution, settlement or other disposition of any suspected infringements or acts of unfair competition of any suspected infringements or acts of unfair competition regarding or related to Licensee's use of the Trademark; and Licensor shall be *entitled to retain any settlement amounts, damages, profits or awards of any* nature obtained or recovered for alleged acts of infringement or unfair competition regarding or related to the Licensee's use of the Trademark.

6. <u>Early Termination.</u>

a. This Agreement shall terminate automatically and without notice if Licensee fails to execute a copy of the Membership Agreement within six months of the date hereof.

b. At any time after execution of the Membership Agreement, this Agreement shall terminate automatically and without notice on the date that Licensee ceases to be a member of Licensor.

c. In the event that Licensee defaults or fails to comply with any provision of this Agreement, Licensor may terminate this Agreement upon not less than fourteen (14) days written notice to Licensee; but if Licensee shall correct

such default or failure to Licensor's satisfaction during the notice period, the notice shall be of no further force and effect.

7. **No Partnership.** Nothing contained herein shall constitute a joint venture, partnership or franchise arrangement between Licensor and Licensee. As between Licensor and Licensee, Licensee shall be considered an independent contractor and shall be free to conduct its affairs in its sole discretion provided only that Licensee complies fully with the terms of this Agreement.

8. **Notices.** Any notices required or permitted to be given under this Agreement shall be deemed sufficiently given if mailed by certified mail, postage prepaid, express courier or telecopier addressed to the party to be notified at the address shown on the signature page hereto, or at such other address as may be furnished in writing to the notifying party from time to time.

9. **Entire Agreement.** This Agreement contains the entire understanding between the parties hereto, cannot be amended except in writing, signed by the parties hereto, and shall be interpreted in accordance with the laws of the State of New York and applicable federal law of the United States. Any and all disputes relating to this Agreement shall be adjudicated in the State of New York.

10. **Counterparts.** This Agreement may be executed in one or more counterparts each of which shall be deemed an original but all of which taken together shall constitute one and the same document.

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

LICENSOR

Dress for Success Worldwide

By: _Marcella Davis_

Name: _Marcella Davis_

Title: _Affiliate Relation Director_

Address:

Dress for Success Worldwide
19 Union Square West, Suite 6B
New York, NY 10003

LICENSEE

_Dress 4 Success_

By: _Janet Lavender_

Name: _JANET LAVENDER_

Title: _Founder / Executive Director_