PAUL, HASTINGS, JANOFSKY & WALKER LLP
Robert L. Sherman (RS 5520)
75 East 55th Street
New York, NY 10022
(212) 318-6000

Attorneys for Defendant Dress 4 Success

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRESS FOR SUCCESS WORLDWIDE,<br><br>                              Plaintiff,<br><br>          - against -<br><br>DRESS 4 SUCCESS<br><br>                              Defendant. | Case No. 08 Civ. 6744 |

## ANSWER WITH COUNTERCLAIMS

Defendant Dress 4 Success ("Dress 4 Success" or "Defendant"), by its attorneys, Paul,

Hastings, Janofsky & Walker LLP, for its Answer to the Complaint of Dress for Success Worldwide

("Dress for Success Worldwide" or "Plaintiff"), responds as follows:

1.      Denies knowledge or information sufficient to form a belief as to the allegations set

forth in paragraph 1, but admits that Plaintiff makes the allegations contained in the Complaint.

2.      Admits that Plaintiff claims to have commenced an action for trade name and service

mark infringement, false designation of origin, false advertising, and dilution under the Trademark

Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, for common law trade name

and service mark infringement and unfair competition, for conversion, and for breach of contract, but denies any liability as a result thereof.

     3.     Admits the allegations set forth in paragraph 3.

     4.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 4.

     5.     Admits the allegations set forth in paragraph 5.

     6.     Denies that Plaintiff was nationally or internationally known in 1996, and denies knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 6.

     7.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 7.

     8.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 8.

     9.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 9.

     10.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 10, and denies that Plaintiff has received significant publicity in local, national, and international press each year since its inception.

     11.     Denies that Plaintiff has owned or used the tradename "Dress for Success" or service mark DRESS FOR SUCCESS ("Plaintiff's Mark") in California, and possibly other locations within the United States, since 1996, and denies knowledge or information sufficient to form a belief as to the remaining allegations set forth in paragraph 11.

12.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 12, but denies that Plaintiff's registration for DRESS FOR SUCCESS is incontestable as against prior users and admits that Plaintiff has annexed a copy of its registration as Exhibit A to the Complaint.

13.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 13 as they relate to affiliates other than Defendant.  Denies the allegations set forth in paragraph 13 as they relate to Defendant, but admits that Defendant and Plaintiff entered into a Membership Agreement (the "Membership Agreement") and that Plaintiff promised the alleged benefits to Defendant pursuant to that Membership Agreement and pursuant to other representations to and agreements with Defendant, but denies that Plaintiff fulfilled its obligation to provide the promised benefits.

14.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 14 as they relate to affiliates other than Defendant.  Denies the allegations set forth in paragraph 14 as they relate to Defendant, but admits that Defendant and Plaintiff entered into a Trademark License Agreement (the "Trademark License Agreement"), and refers the Court to the Trademark License Agreement for its terms.

15.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 15.

16.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 16.

17.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 17.

18.    Admits that Janet Lavender founded an organization called Dress 4 Success in 1996, that Defendant incorporated as a not-for-profit corporation in California under the name Dress 4 Success in 1997, and that Defendant's stated mission was as alleged in paragraph 18.

19.    Denies the allegations set forth in paragraph 19.

20.    Admits the allegations set forth in paragraph 20.

21.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in the first sentence of paragraph 21. Denies the remaining allegations set forth in paragraph 21, but admits that in 1999, after Defendant first became aware of Plaintiff, Defendant informed Plaintiff of Defendant's common law rights in the trademark DRESS 4 SUCCESS ("Defendant's Mark") and demanded that Plaintiff cease and desist using Plaintiff's Mark in Los Angeles County as such use constituted a violation of the Lanham Act and of California law, and that such dispute was resolved when, on information and belief, Plaintiff ceased using Plaintiff's Mark in Los Angeles County and in California generally from that time until 2001. Further admits that in 2001, Plaintiff approached Defendant to suggest that the parties affiliate and share in the proceeds of potential sponsors of Plaintiff who, on information and belief, were interested in donating to Plaintiff only if Plaintiff had a presence in Los Angeles, and that following discussions in which Plaintiff made various representations regarding the sharing of funds with Defendant, the parties entered into the Membership Agreement and Trademark License Agreement (collectively, the "Agreements") effective as of January 18, 2001. Admits that pursuant to the Agreements, Defendant became an affiliate of Plaintiff as of January 18, 2001 and subsequently used the name Dress for Success Los Angeles in its capacity as an affiliate, but continued to use the Defendant's Mark and the name Dress 4 Success in connection with its services. Admits that Plaintiff annexed copies of the

Membership Agreement and Trademark License Agreement to the Complaint as Exhibits B and C respectively.

22.    Denies the allegations set forth in paragraph 22, but admits that the Trademark License Agreement grants Defendant an exclusive right to use Plaintiff's Mark in Los Angeles and surrounding areas for a 150 mile radius in conjunction with the collection and distribution of professional clothing to women seeking employment and other activities related to assisting such women in obtaining and retaining employment.

23.    Denies the allegations set forth in the first sentence of paragraph 23, but admits that the recitals in the Trademark License Agreement, which are not part of the substantive terms of that agreement, state that "Licensor owns the tradename Dress for Success and the stylized trademark and logo set for on Exhibit A ('the Trademark')," and admits that the Trademark License Agreement provides that  Defendant acknowledges Plaintiff's "exclusive, [sic] right, title, and interest in and to the Trademark and associated goodwill," and agreed "not at any time [to] do or cause to be done any act or thing contesting or in any way impairing, diluting, tarnishing, injuring, or otherwise jeopardizing such right, title, and interest." Admits the allegations set forth in the second sentence of paragraph 23 and refers to the Court to the Trademark License Agreement for its terms regarding the "services set forth in clause 3.c." Admits the allegations set forth in the third sentence of paragraph 23.

24.    Admits the allegations set forth in the first sentence of paragraph 24.  Denies the allegations set forth in the second sentence of paragraph 24, but admits that Plaintiff's breach of contract claim relates to the Agreements.

25.     Admits the allegations set forth in the first sentence of paragraph 25. Denies the allegations set forth in the second sentence of paragraph 25, and states that Plaintiff was and is aware that Defendant continued providing clothing and career services to men.

26.     Denies the allegations set forth in the first sentence of paragraph 26, but admits that subsequent to entering into the Membership Agreement and Trademark License Agreement, Plaintiff required Defendant and, on information and belief, other affiliates to agree to comply with Plaintiff's *Communications Guide* in order to maintain "good standing" and to avoid probation and/or termination, and admits that subsequent to entering into the Membership Agreement and Trademark License Agreement, Defendant agreed to comply with Plaintiff's *Communications Guide*, which set forth substantially greater requirements for Defendant as compared to the Membership Agreement and Trademark License Agreement, and states that there was no consideration for Defendant's agreement to comply with Plaintiff's *Communications Guide*. Denies the allegations set forth in the second sentence of paragraph 26, but admits that Defendant agreed to refer to itself as "Dress for Success Los Angeles" in connection with services offered pursuant to the Agreements and when representing itself in its capacity as an affiliate of Plaintiff, and further admits that Defendant agreed to write "Dress for Success Los Angeles" the same way whenever it was used. Denies the allegations set forth in the third sentence of paragraph 26, but admits that Defendant agreed to write "Dress for Success Los Angeles" on promotional materials in connection with the services offered pursuant to the Agreements and when representing itself in its capacity as an affiliate of Plaintiff.

27.     Denies the allegations set forth in the first sentence of paragraph 27, but admits that subsequent to entering into the Membership Agreement and Trademark License Agreement,

Plaintiff required Defendant and, on information and belief, other affiliates to agree to comply with Plaintiff's *Policy Guide* in order to maintain "good standing" and to avoid probation and/or termination, and admits that subsequent to entering into the Membership Agreement and Trademark License Agreement, Defendant agreed to comply with Plaintiff's *Policy Guide*, which set forth substantially different and greater requirements for Defendant as compared to the Membership Agreement and Trademark License Agreement, and states that there was no consideration for Defendant's agreement to comply with Plaintiff's *Policy Guide*.

28.     Denies the allegations set forth in paragraph 28, but admits that at or around the time of the execution of the Agreements, Defendant began also using Plaintiff's Mark and "Dress for Success Los Angeles" in connection with services offered pursuant to the Agreements and when representing itself in its capacity as an affiliate of Plaintiff in addition to continuing use of Defendant's Mark, and states that Plaintiff is and was aware of Defendant's continued use of Defendant's Mark.

29.     Denies the allegations set forth in paragraph 29, but admits that for approximately seven years following execution of the Agreements, Defendant was an affiliate of Plaintiff and that Defendant used Plaintiff's Mark and referred to itself as "Dress for Success Los Angeles" when providing services pursuant to the Agreements, when dealing with or representing itself to clients, donors, and the public in its capacity as an affiliate of Plaintiff, and when promoting itself in print, online and at events in its capacity as an affiliate of Plaintiff and/or in connection with services offered pursuant to the Agreements.

30.     Denies the allegations set forth in paragraph 30.

31.     Admits the allegations set forth in paragraph 31.

32.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 32, but admits that there was a "hearing" before Plaintiff's Board of Directors on March 6, 2008 for the purpose of terminating Defendant's Membership Agreement with Plaintiff, admits that the meeting was attended by Defendant's attorneys, and admits that Defendant received a letter from Plaintiff on March 14, 2008 stating that the Board of Directors had unanimously voted to terminate the membership and not to renew the Trademark License Agreement.

33.    Denies knowledge or information sufficient to form a belief as to the allegations set forth in paragraph 33 and each of its subparts.

34.    Denies the allegations set forth in paragraph 34, but admits that Defendant may have accepted a donation on March 10, 2008, before receiving Plaintiff's letter dated March 14, 2008, that as of March 6, 2008, Defendant began informing actual and potential sponsors that Defendant may not longer be affiliated with Plaintiff, and that from the time that Defendant received Plaintiff's termination letter, Defendant has, as necessary, sought to inform actual and potential sponsors that Defendant was no longer affiliated with Plaintiff.

35.    Admits the allegations set forth in paragraph 35.

36.    Denies the allegations set forth in paragraph 36, but admits that on May 15, 2008, Defendant filed to change its corporate name listed with the Secretary of State to Dress 4 Success.

37.    Denies the allegations set forth in paragraph 37, but admits that upon Plaintiff's termination of Defendant as an affiliate of Plaintiff, Defendant ceased using Plaintiff's Mark and ceased using "Dress for Success for Los Angeles" or any other designation that suggests that Defendant is an affiliate of Plaintiff, admits that Defendant continued to operate as Dress 4 Success and continued to use Defendant's Mark, and admits that Defendant launched its new website at

www.dress4success.org, on which Defendant advertises and promotes itself under its Dress 4
Success corporate name and under its DRESS 4 SUCCESS Mark.

38.    Denies the allegations set forth in the first sentence of paragraph 38, but admits that
Defendant's name occasionally appears in all capital letters. Denies the allegations set forth in the
second sentence of paragraph 38, but admits that Defendant inadvertently and in good faith had
used the registration symbol but promptly removed it when it was brought to Defendant's attention.

39.    Admits the allegations set forth in paragraph 39.

40.    Denies the allegations set forth in paragraph 40, but admits that Defendant hired a
third-party to design and develop content for the website and that Defendant did not check all of
the content developed by the third-party against the content on Plaintiff's website.

41.    Denies the allegations set forth in the first sentence of paragraph 41. Denies the
remaining allegations set forth in paragraph 41, but admits that Defendant continues to solicit
sponsors and to accept donations while taking significant precautions, including but not limited to
designing a new logo, adopting a new tagline, producing new promotional materials and business
cards, and providing written and verbal disclosures to ensure that prospective donors and sponsors
are aware that Defendant is no longer affiliated with Plaintiff. Further admits that Defendant may
have told donors about "S.O.S." prior to Plaintiff's termination of the Agreements, that Defendant
responds to inquiries regarding clothing drives and receives donations of suits in the ordinary course
of business, and that Defendant would have no way to know that an inquiry or donation was
specific to "S.O.S." unless a donor so states.

42.    Denies the allegations set forth in paragraph 42, but admits that concurrent use of
Plaintiff's Mark and Defendant's Mark in the same trade area is likely to cause confusion and that

Plaintiff's use of Plaintiff's Mark in Defendant's trade area is likely to lead the public to mistakenly believe that Defendant and Plaintiff are related or affiliated.

43.     Denies the allegations set forth in paragraph 43, but admits that Plaintiff knew that Defendant continued using Defendant's Mark throughout the term of the Agreements, admits that at the March 6, 2008 "hearing" before Plaintiff's Board of Directors, Defendant's attorneys made known Defendant's intent to continue using Defendant's Mark regardless of the outcome of the "hearing," and admits that on May 20, 2008, Plaintiff, through its attorneys, sent a letter to Defendant demanding that Defendant refrain from use of Defendant's Mark and purporting to assert that Defendant's use of Defendant's Mark infringes Plaintiff's rights in Plaintiff's Mark. Further admits that on June 13, 2008, counsel for Defendant responded orally to Plaintiff's letter dated May 20, 2008 and stated that Defendant would not voluntarily cease using Defendant's Mark because Defendant has and maintains prior rights in Defendant's Mark.

44.     Denies the allegations set forth in paragraph 44.

## COUNT I
### Federal Service Mark Infringement

45.     Defendant repeats and realleges its responses to paragraphs 1 through 44 as if fully set forth herein.

46.     The allegations set forth in paragraph 46 call for a legal conclusion to which no response is necessary.  To the extent a response is necessary, denies the allegations set forth in paragraph 46.

47.    The allegations set forth in paragraph 47 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 47.

48.    The allegations set forth in paragraph 48 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 48.

49.    Denies the allegations set forth in the first sentence of paragraph 49, but admits that in 2008 Defendant had actual knowledge of Plaintiff's trademark registration, which rights do not extend to the trade area in which Defendant was operating as of November 20, 1997 and in which Defendant has continued to operate to date. The remaining allegations set forth in paragraph 49 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the remaining allegations set forth in paragraph 49.

50.    Denies the allegations set forth in paragraph 50.

## COUNT II
### Federal Unfair Competition, False Designation of Origin, and False Advertising

51.    Defendant repeats and realleges its responses to paragraphs 1 through 50 as if fully set forth herein.

52.    The allegations set forth in paragraph 52 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 52.

53.    The allegations set forth in paragraph 53 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in

paragraph 53, but admits that Defendant is now using and since 1996 continuously has used the Dress 4 Success name and DRESS 4 SUCCESS Mark, with Plaintiff's knowledge, and further admits that Defendant is using the www.dress4success.org domain name.

54.    The allegations set forth in paragraph 54 call for a legal conclusion to which no response is necessary.  To the extent a response is necessary, denies the allegations set forth in paragraph 54, but admits that Plaintiff's Mark and Defendant's Mark are confusingly similar.

55.    The allegations set forth in paragraph 55 call for a legal conclusion to which no response is necessary.  To the extent a response is necessary, denies the allegations set forth in paragraph 55, but admits that Plaintiff's Mark and Defendant's Mark are confusingly similar.

56.    Denies the allegations set forth in paragraph 56, but admits that Plaintiff has no control over the services that are promoted, advertised, and provided by Defendant in Defendant's trade area under Defendant's trade name, under Defendant's Mark, and on Defendant's website.

57.    The allegations set forth in paragraph 57 call for a legal conclusion to which no response is necessary.  To the extent a response is necessary, denies that there is any continuing violation arising from Defendant's good faith error in using the federal registration symbol on its website, which error was promptly rectified.

58.    Denies the allegations set forth in paragraph 58.


## COUNT III
### Dilution of a Famous Mark

59.    Defendant repeats and realleges its responses to paragraphs 1 through 58 as if fully set forth herein.

LEGAL_US_W # 59781163.4

60.    The allegations set forth in paragraph 60 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 60.

61.    The allegations set forth in paragraph 61 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 61.

62.    Denies the allegations set forth in paragraph 62.

63.    Denies the allegations set forth in paragraph 63.

64.    Denies the allegations set forth in paragraph 64.

65.    The allegations set forth in paragraph 65 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 65.

66.    Denies the allegations set forth in paragraph 66.

## COUNT IV
### Common Law Trade Name and Service Mark Infringement and Unfair Competition

67.    Defendant repeats and realleges its responses to paragraphs 1 through 66 as if fully set forth herein.

68.    The allegations set forth in paragraph 68 call for a legal conclusion to which no response is necessary. To the extent a response is necessary, denies the allegations set forth in paragraph 66.

69.    Denies the allegations set forth in paragraph 69.

70.    Denies the allegations set forth in paragraph 70.

71.    Denies the allegations set forth in paragraph 71.

72.    Denies the allegations set forth in paragraph 72, but admits that concurrent use of Plaintiff's Mark and Defendant's Mark in the same trade area is likely to cause confusion and that Plaintiff's use of Plaintiff's Mark and trade name in Defendant's trade area is likely to cause confusion and mistake in the minds of the public as to the source of origin of the parties' services.

## COUNT IV
### Conversion

73.    Defendant repeats and realleges its responses to paragraphs 1 through 72 as if fully set forth herein.

74.    Denies the allegations set forth in paragraph 74.

75.    Denies the allegations set forth in paragraph 75, but admits that prior to the commencement of this action but after the Defendant had deposited and expended the check in good faith and in the ordinary course of business, Defendant learned that the check had been inadvertently sent to Defendant, and admits that Defendant and the sponsor had engaged in communications regarding the Defendant's desire to repay the funds as promptly as Defendant's financial situation reasonably allows.

76.    Denies knowledge or information sufficient to form a belief as to the proper party to whom to make repayment, but admits the remaining allegations set forth in paragraph 76.

77.    Denies the allegations set forth in paragraph 77.

78.    Denies the allegations set forth in paragraph 78 and denies knowledge or information sufficient to form a belief as to the proper party to whom to make repayment, but

admits that Defendant desires to develop a repayment plan in order to repay the funds to the proper

party as promptly as Defendant's financial situation reasonably allows.

79.    Denies the allegations set forth in paragraph 79.

## COUNT VI
## Breach of Contract

80.    Defendant repeats and realleges its responses to paragraphs 1 through 79 above as if

fully set forth herein.

81.    Denies the allegations set forth in paragraph 81, but admits that the Membership

Agreement and Trademark License Agreement were intended to be valid, binding, and fully

enforceable contracts.

82.    Denies the allegations set forth in paragraph 82.

83.    Denies the allegations set forth in paragraph 83.

84.    The allegations set forth in paragraph 84 call for conclusions of law to which no

response is necessary.  To the extent a response is necessary, denies the allegations set forth in

paragraph 84.

    a.    Denies the allegations set forth in subparagraph (a) of paragraph 84, but

admits that upon receiving a check from a sponsor that previously had made donations directly to

Defendant, Defendant deposited that check in the ordinary course of business with the good faith

but mistaken belief that the sponsor intended to make a donation to Defendant, and admits to

attempting to work out a payment plan with the sponsor.

    b.    Denies the allegations asserted in subparagraph (b) of paragraph 84, but

admits that Plaintiff has informed Defendant of approximately 25 purported complaints regarding

Defendant over the seven-year term of the parties' Agreements and over the course of Defendant

interacting with thousands of actual and prospective donors, sponsors, volunteers, and clients, with

the majority of complaints occurring in 2006, a year which Defendant notified Plaintiff would be

difficult due to organizational, financial, and staffing issues and during which Plaintiff failed to

provide meaningful support and instead placed Defendant on "probationary status," increased

Defendant's reporting and administrative burdens,  and instructed Defendant to suspend providing

services.

        c.      Denies the allegations set forth in subparagraph (c) of paragraph 84, but

admits that Defendant accepted an offer to donate lingerie under the belief that it was a bona fide

offer for undergarments.

        d.      Denies the allegations set forth in subparagraph (d) of paragraph 84, but

admits that Defendant received a donation of more than 25,000 shoes and sought but was refused

assistance from Plaintiff in handling the donation, which was of a size that exceeded Defendant's

expertise or resources, and admits that Plaintiff informed Defendant that the tax receipt used was

improper and that Defendant then provided the donor with the proper receipt.  Further admits that

among the thousands of donations received, there were a few isolated incidents in which Defendant,

which was operating with a limited staff and few resources, took longer than usual to provide a

receipt or accidentally provided an incorrect form of receipt.

        e.      Denies the allegations set forth in subparagraph (e) of paragraph 84.

        f.      Denies the allegations set forth in subparagraph (f) of paragraph 84, but

admits that Defendant operated a thrift shop selling both men's and women's clothing in Long

Beach, California under the name Dress 4 Success and under the mark DRESS 2 IMPRESS without

establishing it as a separate 501(c)(3), and further admits that Plaintiff was aware (i) of the existence

of the thrift shop at least as early as 2005 and (ii) that the thrift shop was not established as a

separate 501(c)(3), and that Plaintiff raised no objections to Defendant regarding the thrift shop

until Plaintiff notified Defendant of the potential grounds for seeking termination of the

Agreements.

g.    Denies the allegations set forth in subparagraph (g) of paragraph 84, but

admits that Plaintiff gave Defendant the lowest scorecard rating of five on five of the six categories

reported on the *Annual Survey* in 2007, despite Defendant's objection that it was neither fair nor in

good faith for Plaintiff to rate Defendant in the year after Plaintiff had placed Defendant on

probation, instructed Defendant to suspend or curtail services and fundraising, and increased the

burdens on Defendant, and despite the fact that Plaintiff promised Defendant that the ratings were

solely for Defendant's benefit.  Further admits that, on information and belief, the ratings were

determined at a time when Plaintiff wanted to terminate the Agreements and/or affiliation with

Defendant or that the ratings were determined by employees of Plaintiff who wanted Plaintiff to

terminate the Agreements and/or affiliation with Defendant.

h.    Denies the allegations set forth in subparagraph (h) of paragraph 84, but

admits that the revenue figure provided on Defendant's 2006 Form 990 was accurate, that

Defendant supplied Plaintiff with a copy of Defendant's 2006 Form 990, that Defendant may have

misunderstood the question being asked on Plaintiff's *Annual Survey* and that any misinformation

provided to Plaintiff on the *Annual Survey* was inadvertent and resulted from Defendant's good faith

confusion or error.  Further admits that Defendant spent $4,748.18 on an automobile lease for a car

used for picking up and transporting donations.

      i.     Denies the allegations set forth in subparagraph (i) of paragraph 84, but admits that Defendant paid a $500 fee on March 24, 2003; admits that, after corresponding with Plaintiff about Defendant's financial difficulties and unusual organizational problems and receiving an extension of time from Plaintiff, Defendant on July 16, 2004 in good faith sent Plaintiff a $500 check post-dated to September 15, 2004, which was the earliest date on which Defendant expected to be able to pay the fee; admits that although Defendant caused to be paid $489 earlier in 2007, it wrote a check for the remaining balance of $11 on March 9 2007; and further admits that in each instance, Plaintiff accepted the fees from Defendant.

      j.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in subparagraph (j) of paragraph 84, but admits that Defendant may have failed to timely respond to Plaintiff's annual survey.

      k.     Denies knowledge or information sufficient to form a belief as to the allegations set forth in subparagraph (k) of paragraph 84, but admits that although Defendant is not obligated by the parties' Agreements to sign, submit signed acknowledgement forms for, or abide by the *Policy Guide* or *Communications Guide*, Defendant nonetheless signed acknowledgment forms for those guides but may not have submitted all of the signed acknowledgment forms to Plaintiff by the dates that Plaintiff claimed the forms were due.

      l.     Denies the allegations set forth in subparagraph (l) of paragraph 84, but admits that Defendant rightfully exercised its discretion regarding prioritization of and participation in events, and further admits that, to the best of Defendant's knowledge and belief, Defendant participated in substantially all such events.

m.    Denies the allegations set forth in subparagraph (m) of paragraph 84, but admits that in an effort to remain operational even when faced with no staff and few resources, and when under operating under increased constraints and burdens placed upon it by Plaintiff, Defendant may have sent out materials containing some typographical errors.

85.    Denies the allegations set forth in paragraph 85.

86.    Denies the allegations set forth in paragraph 86.

## AFFIRMATIVE DEFENSES

By way of separate and affirmative defenses to the Complaint, and each and every Claim contained therein, Defendant asserts the following:

### First Affirmative Defense
### (Laches)

87.    Each and every claim concerning or relating to trademark infringement or service mark infringement, unfair competition, false designation of origin, false advertising, and dilution is barred, in whole or in part, by reason of laches.

### Second Affirmative Defense
### (Acquiescence)

88.    Each and every claim concerning or relating to trademark infringement or service mark infringement, unfair competition, false designation of origin, false advertising, dilution, and breach of contract is barred, in whole or in part, by reason of acquiescence.

### Third Affirmative Defense
### (Unclean hands)

89.     Each and every claim concerning or relating to trademark infringement or service

mark infringement, unfair competition, false designation of origin, false advertising, dilution, and

breach of contract is barred, in whole or in part, by reason of unclean hands based upon, without

limitation:

(a) engaging in an unauthorized franchise;

(b) misrepresenting facts and inducing Defendant to enter into Agreements with the

underlying purpose of having Defendant unknowingly relinquish her common law rights in

Defendant's Mark;

(c) creating a record of complaints and noncompliance as a pretext to terminate the

Member Agreement;

(d) instructing the corporate sponsor that inadvertently sent a check not to follow-up

with Defendant, choosing not to address it with Defendant directly, and then using non-

responsiveness and alleged conversion as evidence of breach of contract; and

(e) requiring that Defendant cease or curtail services and solicitations, then

measuring Defendant against non-probationary years, and misleadingly using those numbers to

create a negative portrait of Defendant as a pretext for ending the Membership Agreement.

### Fourth Affirmative Defense
### (Waiver or Estoppel)

90.     Each and every claim is barred, in whole or in part, by reason of waiver and estoppel.

**Fifth Affirmative Defense**
**(Failure to Mitigate)**

91.    Each and every claim concerning or relating to breach of contract or conversion is barred, in whole or in part, by reason of Plaintiff's failure to mitigate.

**Sixth Affirmative Defense**
**(Failure of Consideration)**

92.    Each and every claim concerning or relating to breach of contract is barred for a failure of consideration insofar as the claims arise from acts or omissions alleged to breach any agreement other than the Membership Agreement and Trademark License Agreement.

## COUNTERCLAIMS

As and for its counterclaims, Defendant pleads as follows based on information and belief:

93.    Defendant repeats and realleges paragraphs 1-92 as if fully set forth herein.

### Defendant's Rights in DRESS 4 SUCCESS

94.    Defendant began operating under the trade name and using the service mark DRESS 4 SUCCESS in 1996 with the mission of helping people who are economically disadvantaged enter or re-enter the workforce by providing them with professional attire and related career-development tools and services.  Defendant filed to incorporate as a not-for-profit corporation in California in January 1997 and was incorporated as a not-for-profit corporation in California by May 1997.

95.    Defendant acquired common law rights in DRESS FOR SUCCESS in Los Angeles County and surrounding areas from its date of first use in 1996.

LEGAL_US_W # 59781163.4

-21-

96.    In 1997, Defendant received letters of recognition and appreciation for Dress 4 Success from the office of Los Angeles Mayor Richard Riordan and the Los Angeles County Office of Education – GAIN Division (Department of Social Services), U.S. Congressman Howard Berman, and U.S. Senator Barbara Boxer. In early 1998, Defendant received additional letters of recognition and appreciation from California Governor Pete Wilson and U.S. Senator Diane Feinstein.

97.    Plaintiff did not offer services under Plaintiff's Mark in Los Angeles County or anywhere in California in 1996 or 1997, either itself or through an affiliate, licensee, or related company.

98.    Plaintiff filed its application for federal trademark registration of DRESS FOR SUCCESS on November 20, 1997. As of the date of Plaintiff's filing, Defendant had already acquired common law rights in DRESS 4 SUCCESS in Defendant's trade area.

99.    On information and belief, when Plaintiff filed its application for federal registration of the DRESS FOR SUCCESS service mark, Plaintiff was aware that it was not the only organization using that mark or a substantially similar mark in connection with the same or closely related services in the United States.

100.    On information and belief, as of June 1998, Plaintiff offered services under Plaintiff's Mark in fewer than twenty (20) cities, and did not offer services under Plaintiff's Mark in Defendant's trade area.

101.    On information and belief, Plaintiff, itself or through an affiliate, licensee, or related company, first used Plaintiff's Mark in Defendant's trade area in the last quarter of 1998 or the first quarter of 1999. On information and belief, Plaintiff was aware of Defendant and

Defendant's Mark at the time that Plaintiff, itself or through an affiliate, licensee, or related company, first used Plaintiff's Mark in Defendant's trade area.

102.    Defendant first became aware of Plaintiff upon learning of the use of Plaintiff's Mark in Defendant's trade area in late 1998 or early 1999, and promptly contacted Plaintiff to object to such use of Plaintiff's Mark. In March and April 1999, Defendant through its attorney demanded that Plaintiff cease and desist from using Plaintiff's Mark in Defendant's trade area because such use infringed Defendant's common law rights in DRESS 4 SUCCESS and constituted violations of the Lanham Act and California law.

103.    On information and belief, following the correspondences between Plaintiff and Defendant in March and April 1999, Plaintiff and its licensees, affiliates, and/or related companies ceased the infringing and violative use of Plaintiff's Mark in Defendant's trade area. On information and belief, there was no commercial use of Plaintiff's Mark in Defendant's trade area from that time until Defendant began using Plaintiff's Mark pursuant to the terms of the Membership Agreement (the "Membership Agreement") and the Trademark License Agreement (the "Trademark License Agreement," and, together with the Membership Agreement, the "Agreements"). Plaintiff was aware that Defendant continued to use Defendant's Mark during that period and did not object to such continued use by Defendant.

104.    From 1996 through 2001, Defendant was a thriving and well-known organization that provided work-appropriate clothing and related services to low-income men and women, serving thousands clients in Los Angeles and surrounding communities. Defendant and its founder Janet Lavender received a significant amount of recognition and publicity in local and national

publications and programs, including but not limited to articles in *Essence Magazine*, *Los Angeles Downtown News*, *Los Angeles Times*, *The Daily News*, and *Apparel News*.

105.    In 2001, Plaintiff approached Defendant to suggest that the parties affiliate.  Plaintiff represented to Defendant that there were potential sponsors who were interested in donating to Plaintiff if Plaintiff would have a presence in Los Angeles and/or if some of the funds would be used in Los Angeles.  On information and belief, Plaintiff was aware that Defendant's common law rights in Defendant's Mark created a bar to Plaintiff's establishing a Los Angeles presence without Defendant's consent and/or cooperation.

106.    Plaintiff represented and agreed that if the parties affiliated, they would hold a joint fundraiser with one of the sponsors and share the proceeds equally.  Although the parties affiliated, that fundraiser never occurred.  Plaintiff also represented and agreed that if it were approached by potential sponsors from the Los Angeles area, it would inform Defendant of those sponsors and would allocate to Defendant a portion of all funds raised from such sponsors.

107.    On information and belief, Plaintiff never intended to hold joint fundraisers or to share a portion of proceeds from Los Angeles sponsors with Defendant.  On information and belief, Plaintiff sought to enter the Membership Agreement and Trademark License Agreement with Defendant in an effort to induce Defendant unknowingly to abandon Defendant's common law rights in Defendant's Mark.

108.    Following discussions and based at least in part on Plaintiff's representations, Defendant entered into the Agreements with Plaintiff, effective as of January 18, 2001.

LEGAL_US_W # 59781163.4

-24-

109.    The Agreements authorize Defendant to use Plaintiff's Mark in connection with collecting and distributing clothing to women seeking employment and providing other related support services.

110.    The Agreements do not prohibit Defendant from using Defendant's Mark, do not contain or constitute an assignment of Defendant's Mark, and do not require Defendant to relinquish any rights or interests in Defendant's Mark.

111.    At the time that the parties entered into the Agreements, Plaintiff was aware that Defendant intended to continue using Defendant's Mark and had no intention of abandoning it.

112.    At the time that the parties entered into the Agreements, Plaintiff was aware that Defendant offered its services to economically-disadvantaged men who were looking to enter or re-enter the workforce.  Plaintiff told Defendant that it would have to separate the area in which it offered clothing to men under Defendant's Mark from the area in which it offered clothing to women.

113.    Defendant continued offering identical or closely related services for men seeking to enter or re-enter the workforce with Plaintiff's knowledge throughout the term of the Agreements.

114.    Defendant continued using Defendant's Mark with Plaintiff's knowledge throughout the term of the Agreements.

115.    Throughout the term of the Agreements, the sign outside Defendant's primary place of business and the sign outside locations where services were rendered showed Defendant's Mark.

116.    Throughout the term of the Agreement, Defendant's fees to Plaintiff were paid on checks bearing the name DRESS 4 SUCCESS.

117.    During the term of the Agreements, Plaintiff visited Defendant's locations on several occasions, was aware that Defendant's signs at those locations said DRESS 4 SUCCESS, and never required Defendant to stop using Defendant's Mark.

118.    On March 1, 2006, in a memorandum to Defendant regarding the terms of Defendant's probation, Plaintiff stated that Defendant would have to develop an inventory tracking system ... to provide a mechanism for separating out contributions to the men's organization, Dress 4 Success." Plaintiff did not at that time, or at any time during the term of the Agreements, require that Defendant cease using Defendant's Mark.

119.    Plaintiff was fully aware that Defendant used Defendant's Mark in connection with providing identical or similar services throughout the term of the Agreement, and that Defendant clearly and conspicuously used Defendant's Mark to identify itself and its services through the sign outside its locations throughout the term of the Agreement.

120.    Prior to termination of the Agreements, Plaintiff never required Defendant to stop making trademark use of Defendant's Mark.

121.    Prior to commencing this action, Plaintiff was aware that Defendant never abandoned any rights in Defendant's Mark, either intentionally or inadvertently.

<u>The Parties' Original Agreement and Dealings</u>

122.    Under §5(a) of the Membership Agreement, Plaintiff agreed that it would "deliver to [Defendant] a portion of each product it receives and shall allocate a certain percentage of funds it receives from all sources that permit such allocation, to [Defendant]. Such portion of product and percentage of funds shall be determined by [Plaintiff] in its sole discretion."

123.    Over the term of the Agreements, Plaintiff did not deliver to Defendant a portion of each product it received.

124.    Over the term of the Agreements, Plaintiff did not allocate to Defendant a percentage of funds from all sources that permit such allocation.

125.    Over the term of the Agreements, Plaintiff did not inform Defendant of all potential sponsors from the Los Angeles area, and did not allocate to Defendant a portion of all funds raised from such sponsors.

126.    In 2006, Plaintiff received a $50,000 donation from the Entertainment Foundation, which is located in or around Los Angeles.  On information and belief, Plaintiff knew or learned that the sponsor intended a portion of those funds to go to Defendant.  Plaintiff did not allocate any of those funds to Defendant.

127.    At the end of 2005 and again in early 2006, Defendant notified Plaintiff that Defendant was in financial distress and sought temporary financial support from Plaintiff while Defendant's outstanding grants were being reviewed by potential sponsors and grantors.

128.    Plaintiff did not provide Defendant with the requested financial support.  Rather, Plaintiff responded to Defendant's crisis by placing Defendant on probation from March 1, 2006 through September 1, 2006.  That probationary period was subsequently extended to December 31, 2006.

129.    On March 1, 2006, Plaintiff sent Defendant a memorandum regarding Defendant's probation.  That memorandum asserted that "[t]he purpose [of the probation] … is to provide you with the opportunity to stabilize the program and emerge from financial crisis.  [Defendant] will need to suspend client services until your space is reorganized and can be properly presented to the

public and your clients.  When you resume suiting you would do so with the understanding that you

must adhere to the terms of the probation...."

130.    The terms of the probation, as laid out in the March 1, 2006 memorandum, included

without limitation the following:

a.    within 60 days Defendant would create and present Plaintiff with a board

development plan and a fundraising plan, each of which had to include "a timeline, benchmarks and

measurable outcomes," and each of which would have to be implemented during the probationary

period;

b.    Defendant would develop inventory practices and policies specifying that

Defendant would only accept professional or interview-appropriate attire, as well as an inventory

tracking system to record all donations and to provide a mechanism to separate out contributions to

"the men's organization, Dress 4 Success;"

c.    Defendant would have to continue to operate its professional women's

group program and to submit monthly reports; and

d.    Defendant could not accept any donations from corporations without

explicit approval from Plaintiff.

131.    At the time that Plaintiff put Defendant on probation, Plaintiff was aware that

Defendant had no paid staff, and was operated entirely by its founder Janet Lavender with extremely

limited funds, support, and resources.

132.    The terms of probation explicitly required Defendant to suspend or curtail services

to clients during 2006.

133.    The terms of probation explicitly prohibited Defendant from accepting any corporate donations without Plaintiff's approval during 2006.

134.    The terms of probation explicitly prohibited Defendant from accepting donations of any clothing other than professional or interview-appropriate attire during 2006.

135.    During the probationary period, Plaintiff suspended all "benefits" to Defendant including in-kind donations.

136.    During the probationary period, Defendant dramatically decreased requests for volunteers and for funding because Defendant did not want to present a poor face to volunteers and donors as it was undergoing a reorganization.

137.    The terms of the probation placed administrative burdens on Defendant that Plaintiff knew or reasonably should have expected would have prevented Defendant from maintaining Defendant's pre-probation levels of service to clients and donors, and from maintaining Defendant's pre-probation fundraising and volunteer recruitment efforts.

138.    Defendant's probationary period ended December 31, 2006.

139.    From 2006-2007, rather than providing support to Defendant, Plaintiff created burdens for the organization that made it difficult for Defendant to function.

140.    Over the term of the Agreement, Plaintiff has not fulfilled its obligation to provide financial and administrative support to Defendant.

141.    In January 2007, Plaintiff visited Defendant. During that visit, Plaintiff expressed that it was pleased with Defendant's business plan and implementation. Plaintiff stated that it was impressed with Defendant's progress and saw the business plan as a model for all affiliates.

142.    In April 2007, Plaintiff made a surprise visit to Los Angeles, during which Plaintiff stated to Defendant that it had "secretly" gone to Defendant's various locations and that it was proud of Defendant's progress.

143.    During the April 2007 visit, Plaintiff instructed Defendant not to engage in any board recruitment or fundraising until explicitly approved by Plaintiff.

144.    On information and belief, the instructions not to recruit board members or raise funds were tied to Plaintiff's attempts to solicit a large donation from a sponsor. On information and belief, Plaintiff attempted to prevent Defendant from contacting that sponsor directly because Plaintiff did not want that sponsor to donate funds directly to Defendant.

145.    In or around May 2007, Defendant advised Plaintiff of an opportunity that would have benefited Defendant's founder and principal financially.  Plaintiff instructed Defendant not to pursue that proposal, suggesting that a potential sponsor was interested in making a very large donation from which Defendant would benefit.

146.    Plaintiff subsequently told Defendant that the sponsor was interested in making a very large contribution to Plaintiff to be used on the West Coast.  Plaintiff told Defendant that in order for the donation to occur, Defendant would have to dissolve and that Plaintiff would create a new regional office.  In addition, under Plaintiff's proposal for the development of the regional office, Defendant and Defendant's founder and principal would receive only a fraction of the promised financial benefit from the opportunity that Plaintiff had told Defendant and its founder and principal to forgo.

147.    From approximately June through August 2007, Plaintiff and Defendant engaged in discussions and disputes regarding the possibility and potential structure of a regional office. During those discussions, Defendant decided and told Plaintiff that it did not want or intend to dissolve.

148.    In or about August 2007, Plaintiff notified Defendant that it intended to open an office in Hollywood, California. Defendant responded by asserting Defendant's trademark rights in that geographic area. Plaintiff sent Defendant a letter stating that it would not be opening in the Los Angeles area in 2007.

149.    On information and belief, during 2007, Plaintiff, or certain officers or directors of Plaintiff, made a determination that it needed to terminate its relationship with Defendant in order to establish its own presence in the Los Angeles area.

150.    Although Plaintiff had placed Defendant on probation in 2006 and, as terms of that probation, had instructed Defendant to cease or scale back on ordinary operations, such as providing service to clients and accepting corporate donations, Plaintiff nonetheless proceeded to "rate" Defendant according to ordinary and unadjusted standards based on its 2006 performance.

151.    After telling Defendant to suspend service to clients in 2006, Plaintiff rated Defendant poorly for a decline in the number of clients served in 2006.

152.    After Plaintiff prohibited Defendant from accepting corporate donations without Plaintiff's approval in 2006 and after constraining the types of donations that Defendant could accept in 2006, Plaintiff rated Defendant poorly for a decline in donations and funds solicited in 2006.

153.    When Defendant inquired about the purpose of rating the organization for its performance during an unusual period in which Defendant had sought help from Plaintiff and was

placed on probation, Plaintiff represented to Defendant that the ratings were solely for Defendant's benefit in order to track progress. Instead, those ratings were asserted as grounds to support termination of Plaintiff's Agreements with Defendant.

154.    On information and belief, Plaintiff knowingly misrepresented the nature and purpose of the ratings to Defendant.

155.    On information and belief, Plaintiff's primary purpose in rating Defendant was to establish a record as a pretext for termination of the Agreements.

156.    On September 17, 2007, Plaintiff sent a letter to Defendant for the first time suggesting that there had been a consistent pattern of "negative feedback ... over the past several years," that it appears to be "a chronic problem," and that Plaintiff's "concern is that it is damaging the brand." On information and belief, Plaintiff's primary purpose in sending that letter was to establish a record as a pretext for termination of the Agreements.

157.    Although the volume of complaints remained relatively low compared to the population served and was no greater than in earlier years, Plaintiff sent another correspondence to Defendant on December 5, 2007, stating that "[a] non-profit's reputation is its most valuable asset, and we are extremely concerned about continuing damage to the brand in Los Angeles." On information and belief, Plaintiff's primary purpose in sending that email was to establish a record as a pretext for termination of the Agreements.

158.    In September 2007, Defendant received a check made out to DRESS FOR SUCCESS from a corporate sponsor that had donated to Defendant previously. Defendant assumed it was a donation, deposited the check and expended the funds. On October 22, 2007, the

sponsor sent a letter to Defendant stating that it had inadvertently sent the check to Defendant but had intended to send it to Plaintiff.

159.    Defendant promptly responded to the sponsor, acknowledged receipt and deposit of the funds, explained that it could not return the funds by the end of the month, and stated that Defendant "would like to set up a comfortable payment plan to pay the funds in a timely manner." Defendant and the sponsor communicated via email message and telephone regarding repayment of the funds, and the sponsor agreed to extend the time for Defendant to repay the funds.

160.    On information and belief, the sponsor was at the same time engaged in correspondence with Plaintiff regarding the funds.

161.    On November 30, 2007, Defendant sent an email message to the sponsor providing information on Defendant's financial status and requesting that the sponsor reconsider requiring Defendant repay the funds by December 31, 2007.   On information and belief, Plaintiff told the sponsor not to respond to that email message and not to contact Defendant further regarding the repayment.

162.    Plaintiff never contacted Defendant about the error, or about repayment of the funds to the sponsor or to Plaintiff, until Plaintiff raised the issue as among the grounds for terminating the Agreements between the parties.

163.    On information and belief, Plaintiff elected not to pursue the matter directly with Defendant, and instructed the sponsor to take no further action, primarily in order to build a case to support terminating the Agreements.

164.    Plaintiff held a "hearing," which was attended by Defendant's attorneys, on March 6, 2008. At that time, Defendant's attorneys made known Defendant's intent to continue using Defendant's Mark regardless of the outcome of the "hearing."

165.    Subsequent to that "hearing," Plaintiff sent Defendant a letter terminating the Membership Agreement and the Trademark License Agreement.

166.    Plaintiff has stated its intent to license an affiliate to use Plaintiff's Mark in Defendant's trade area imminently.

<u>Plaintiff's Additional Requirements</u>

167.    Under §4 of the Membership Agreement as executed on January 18, 2001, Defendant is required to (a) provide its services free of charge to certain individuals; (b) provide Plaintiff with "an annual report setting forth the agencies that provided referrals, the number of clients who sought help from [Defendant], the number of clients who obtained employment during such year and such other information as [Plaintiff] may reasonably request;" (c) comply with the Trademark License; and (d) attend an annual meeting of Plaintiff's members.

168.    § 8 of the Trademark License states that Defendant "shall be free to conduct its affairs in its sole discretion provided only that [Defendant] complies fully with the terms of this Agreement."

169.    Subsequent to the parties entering into the Agreements, Plaintiff required all affiliates, including Defendant, to agree to abide by Plaintiff's *Policy Guide* in order to remain in good standing, to be eligible for in-kind contributions and other membership benefits, and to avoid being

subject to probation and/or termination of the Membership Agreement and/or Trademark License Agreement.

170.    Plaintiff did not provide any consideration to Defendant in exchange for Defendant's agreement to abide by the *Policy Guide*.

171.    The *Policy Guide* contains numerous additional requirements for affiliates, including without limitation:

a.    affiliates must adopt Plaintiff's "Values Statement" or develop a statement consistent with Plaintiff's statement;

b.    affiliates must adopt Plaintiff's Anti-Discrimination Statement, or develop a statement consistent with Plaintiff's statement;

c.    affiliates must acknowledge that they have received, reviewed, and agree to comply with Plaintiff's "comprehensive Communications Guide," whenever it is revised;

d.    affiliates "must structure a board of directors including designated officers and standing committees" that must, among other things, assure compliance with all laws, maintain "the highest financial, contractual, and ethical standards throughout the affiliates," maintain written records of all meetings and legal filings; and adopt annual fundraising goals, plans and programs;

e.    affiliates must have designated legal counsel;

f.    affiliates must submit to Plaintiff a copy of by-laws; incorporation papers; 501(c)(3), charitable registration or fiscal sponsor agreement; copies of tax forms and annual financial review or audits if available; contact lists of the board of directors; and contact information for pro bono counsel;

    g.  affiliates must submit an annual $500 fee, annual written survey, annual budget, and annual documents demonstrating compliance with Standard of Accountability;

    h.  affiliates must participate in quarterly affiliate calls as well as attend the annual conference;

    i.  affiliates must be available to serve clients a minimum of fifteen (15) hours each week spread over at least three (3) days;

    j.  affiliates may not implement any brand extensions or brand applications at the affiliate level; and

    k.  affiliates may sell clothes only in adherence with the policies set forth in the *Policy Guide*, including without limitation constraints on the number of sales, the length of the sales, the population permitted to attend the sales and during which hours, how the sales may be promoted, and what clothing may be offered for sale.

  172.  Under the terms of the *Policy Guide,* failure to comply with any of the aforementioned requirements could subject an affiliate to being placed on probation and/or to termination of the Agreements.

  173.  The *Policy Guide* sets out numerous grounds for placing an affiliate on probation, during which an affiliate is ineligible to receive in-kind donations or other benefits of memberships. It also sets out grounds for termination far beyond the grounds contained in the Agreements.

  174.  In addition to the *Policy Guide*, in order to avoid probation and/or termination, affiliates are required to adhere to Plaintiff's *Standards of Accountability*, and to supply Plaintiff with annual documentation of such compliance.

LEGAL_US_W # 59781163.4

-36-

175.    Plaintiff did not provide any consideration to Defendant in exchange for Defendant's agreement to abide by the *Standards of Accountability*.

176.    The *Standards of Accountability* include without limitation:

a.    each affiliate must provide Plaintiff with the organization's by-laws and all materials relating to the affiliates' board of directors' roles and responsibilities;

b.    each affiliate's board of directors must have a minimum of five voting members who convene face-to-face each year at a minimum of three evenly-spaced meetings of the full governing body, and each affiliate must provide Plaintiff with an annual list of current directors, along with a calendar of the prior year's meetings;

c.    each affiliate's board of directors must annually assess the affiliate's performance and effectiveness and must annually submit a written report outlining both the results of the assessment and recommendations for future action;

d.    each affiliate must submit board-approved budgets to Plaintiff annually;

e.    affiliates must not spend more than 35% of total expenses on administrative costs including fundraising and overhead;

f.    each affiliate must have an "annual report" available to anyone who asks for one;

g.    each affiliate must provide anyone requesting financial information access to its most recent governmental or tax filings;

h.    each affiliate must provide Plaintiff with copies of all correspondences and materials relating to complaints brought to the affiliate's attention by the Better Business Bureau or any consumer affairs body, including a description of the complaint and all steps taken to address it.

177.    Failure to comply with any of the aforementioned requirements could subject that affiliate to being placed on probation and/or to termination of the Agreements.

178.    In addition to the *Annual Survey*, the *Policy Guide*, the *Standards of Accountability*, the *Communications Guide*, and other resolutions, policies, and guides set forth by Plaintiff, in 2007 Plaintiff began requiring affiliates to provide data for *"Mid-Year Scorecards"* to provide a "snapshot" of affiliates' performance over a shorter period than covered by the *Annual Survey*. To comply with the *Mid-Year Scorecards*, affiliates must provide information such as, without limitation, the number of total suitings for clients, number of second suitings, number of active volunteers, funds raised, number of active "Professional Women's Group" members; number of new "Professional Women's Group" members; and number of career center clients.

179.    Failure to agree to, comply with, or provide the documentation required by any of the foregoing can result in an affiliate's probation and subsequent termination.

180.    Plaintiff asserted Defendant's failure to comply fully or to provide complete and timely documentation required by the foregoing as grounds for termination of the Agreements, and relies on such assertions as grounds in this action.

181.    Plaintiff's requirements extend far beyond a membership agreement and trademark license, and are unreasonably burdensome.

182.    Plaintiff's requirements extend far beyond the requirements set forth in the parties' Membership Agreement and/or Trademark License Agreement.

183.    Plaintiff, through its numerous requirements, standards, and guides, seeks to exert and does exert significant control over affiliates' operations, in direct contradiction to Trademark License Agreement § 8.

184. Plaintiff has directly sought to control the operations of Defendant. Plaintiff has suggested that Defendant does not have discretion to operate its organization independently of Plaintiff, such as by admonishing Defendant for determining for itself whether to participate in an event with a sponsor of Plaintiff, and has treated Defendant's rightful exercise of its discretion as a breach of Defendant's contractual obligations.

185. Under the various agreements, guides, and requirements, Defendant and other affiliates may only offer services under Plaintiff's Mark under a marketing plan or system prescribed in substantial part by Plaintiff, or must risk probation and/or termination.

186. Plaintiff's requirements and agreements with its affiliates constitute a franchise arrangement.

187. On information and belief, Plaintiff is operating an unauthorized franchise.

## First Counterclaim
### (Tradename and Trademark Infringement)

188. Defendant repeats and realleges the allegations set forth in paragraphs 1-187 as if fully set forth herein.

189. Defendant's common law rights in DRESS 4 SUCCESS in Defendant's trade area date back to 1996, and predate and therefore limit Plaintiff's rights in its federally registered DRESS FOR SUCCESS Mark.

190. Defendant has continuously used its DRESS 4 SUCCESS mark from 1996 to the present and has never abandoned its mark.

191. DRESS 4 SUCCESS is a distinctive mark.

192. Plaintiff is aware of Defendant's continuous use of its DRESS 4 SUCCESS Mark.

LEGAL_US_W # 59781163.4

-39-

193.    Plaintiff has stated its intention to use Plaintiff's trade name and Plaintiff's Mark in Defendant's area of trade.

194.    Plaintiff's intended use of the Dress for Success trade name and DRESS FOR SUCCESS Mark in Defendant's trade area would create a likelihood of confusion among actual and potential customers, donors, and sponsors as to an affiliation, connection, or association of Plaintiff with Defendant, or as to the origin, sponsorship, or approval or Plaintiff's goods, services, or commercial activities by Defendant.

195.    Plaintiff's intended use of the Dress for Success trade name and DRESS FOR SUCCESS Mark constitute acts of trade name and service mark infringement under the statutory and/or common law of the states of New York and California

196.    Unless enjoined by this Court, Plaintiff's intended use of the Dress for Success trade name and DRESS FOR SUCCESS Mark will cause irreparable harm, damage, and injury to Defendant, for which Defendant has no adequate remedy at law.

### Second Counterclaim
### (Unfair Competition and Unfair Business Practices)

197.    Defendant repeats and realleges the allegations set forth in paragraphs 1-196 as if fully set forth herein.

198.    The acts and conduct of Plaintiff complained of herein constitute unfair competition and unfair and deceptive practices in violation of the statutory and/or common law of the states of New York and California, including under Cal. Bus. and Prof. § 17200 *et seq.*

199.    Plaintiff's intended use of the Dress for Success trade name and DRESS FOR SUCCESS Mark would constitute acts of trade name and service mark infringement under the statutory and/or common law of the states of New York and California.

200.    Unless enjoined by this Court, Plaintiff's intended use of the Dress for Success trade name and DRESS FOR SUCCESS Mark will cause irreparable harm, damage, and injury to Defendant, for which Defendant has no adequate remedy at law.

### Third Counterclaim
### (Breach of Contract)

201.    Defendant repeats and realleges the allegations set forth in paragraphs 1-200 as if fully set forth herein

202.    Defendant has not materially breached any obligation under the Agreements.

203.    To the extent the Membership Agreement and Trademark License Agreement are binding, Plaintiff has materially breached its obligations under the Agreements by its acts, omissions, and conduct complained of herein including, without limitation, failing to provide Defendant with a portion of all products received, failing to provide Defendant with a percentage allocation of all funds received from sponsors who permit such allocation, failing to provide membership benefits to Defendant, exerting such control over Defendant as to prevent Defendant from "conduct[ing] its affairs in its sole discretion."

204.    Plaintiff's breach has harmed Defendant by depriving it of funds and other benefits under the Agreements.

205.    As a result of Plaintiff's breach, Defendant is entitled to a judgment for damages in an amount to be proven at trial.

### Fourth Counterclaim
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

206.    Defendant repeats and realleges the allegations set forth in paragraphs 1-205 as if fully set forth herein.

207.    Plaintiff has materially breached the implied covenant of good faith and fair dealing in the Agreements.

208.    Defendant has substantially and materially performed its obligations under the Agreements.

209.    As a result of Plaintiff's breach, Defendant is entitled to a judgment for damages in an amount to be proven at trial.

### Fifth Counterclaim
### (Rectification of Federal Register)

210.    Defendant repeats and realleges the allegations set forth in paragraphs 1-209 as if fully set forth herein.

211.    At the time that Plaintiff filed its application for federal registration of Plaintiff's Mark, Defendant had valid common law rights in Defendant's Mark in Defendant's trade area, dating back to 1996.

212.    Defendant continues and has continued to use Defendant's Mark in commerce.

213.    Defendant has and maintains trademark rights in Defendant's Mark for the trade area as they existed as of November 20, 1997, the date that Plaintiff filed its trademark application.

214.    As a result of the foregoing, pursuant to 15 U.S.C. § 1119, Defendant is entitled to rectification of trademark Registration No. 2,220,390.

**WHEREFORE,** Defendant requests that this Court enter judgment as follows:

a) Dismissing Plaintiff's Complaint in its entirety;

b) Declaring that Defendant maintains its common law rights in DRESS 4 SUCCESS in Defendant's trade area;

c) Preliminarily and permanently enjoining Plaintiff, its officers, agents, servants, employees, and attorneys, and those acting in concert with them from:

    i. offering or promoting services, or soliciting funds or other donations in support of services, offered under or in connection with Plaintiff's Mark in Defendant's trade area;

    ii. representing by any means whatsoever, directly or indirectly, that Plaintiff offers services in Defendant's trade area; and

    iii. representing by any means whatsoever, directly or indirectly, that any products or services offered by Plaintiff are associated with, sponsored, endorsed or authorized by, or connected or affiliated with Defendant.

d) Requiring Plaintiff to file with this Court and to serve upon Defendant, within 30 days after entry and service on Plaintiff of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction, pursuant to 15 U.S.C. § 1116;

e) Awarding Defendant damages sustained by reason of Plaintiff's breach of the Agreements and breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial;

f) Ordering the U.S. Patent and Trademark Office to rectify the Federal Register so

that Registration No. 2,220,390 is properly limited to geographical areas excluding

Defendant's trade area; and

g) Awarding Defendant additional relief as the Court may deem just, proper, and

equitable.

Dated: New York, NY
        September 2, 2008

Respectfully submitted,
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: Robert L. Sherman (RS-5520)

75 East 55th Street
New York, NY 10022
(212) 318-6000 (telephone)
(212) 318-6847 (facsimile)

Attorneys for Defendant Dress 4 Success, Inc.